UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERRY L. FASSETT,

        Plaintiff,

vs.

SHERMETA, ADAMS &
VON ALLMEN, P.C., *et al.*,

        Defendants.

                              /

Case No. 1:12-cv-36

Hon. Hugh W. Brenneman, Jr.

**OPINION**

*Pro se* plaintiff Jerry L. Fassett filed a complaint in this court seeking relief related to alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 5 U.S.C. § 1692 *et seq.* and the M.C.L. § 339.901 *et seq*. Compl. (docket no. 1). Plaintiff has named as defendants a law firm, Shermeta, Adams & Von Allmen, P.C. (the "law firm"), and six attorneys employed by that firm, Douglas H. Shermeta, Kyle J. Von Allmen, Deborah A. Winslow, Tricia N. McKinnon, Teri P. Gruca, and April N. Nason. *Id.* at ¶¶ 6-12.[1] This matter is now before the court on defendants' motion for summary judgment (docket no. 17).

**I.    Background**

**A.    Factual background**

Plaintiff's claims arise from the following events. Defendants acted as the attorneys for Capital One, for the purpose of collecting a delinquent account on plaintiff's credit card ending in 9760. *See* Defendants' Letter (June 8, 2011) (docket no. 18-2); 58th District Court Complaint

---

[1] The court notes that plaintiff sometimes refers to defendant "Von Allmen" as "Von Allman."

(docket no. 18-3 and 18-4). In a letter to plaintiff dated June 8, 2011, defendants identified the account and the current amount due of $12,064.23. Defendants' Letter (June 8, 2011). The letter advised plaintiff that "[b]ecause of interest and other charges that may accrue, the amount you own may continue to increase daily." *Id.* Defendants prepared a complaint to collect the debt which was dated July 5, 2011. *See* 58th District Court Complaint.

Plaintiff sent defendants a letter requesting validation of the debt dated July 6, 2011. Plaintiff's Letter (July 6, 2011) (docket no. 18-5). This letter was apparently received by defendants on July 11, 2011. *Id.* In this letter, plaintiff advised defendants that "your claim is disputed and validation is requested" pursuant to 15 U.S.C. § 1692g. *Id.* Plaintiff then provided defendants with a list of requests related to the debt:

"Please provide me with the following:

What the money you say I owe is for;
Explain and show me how you calculated what you say I owe;
Provide me with copies of any papers that show I agreed to pay what you say I owe;
Provide a verification or copy of any judgment if applicable;
Identify the original creditor;
Prove the Statute of Limitations has not expired on this account[;]
Show me that you are licensed to collect in my state[;]
Provide me with your license numbers and Registered Agent."

*Id.* Plaintiff also advised defendants that, among other things, they may be liable for fraud if they reported information to any of the three major credit bureaus, and that "if any negative mark is found on any of my credit reports by your company or the company that you represent I will not hesitate in bringing legal action against you" for "Violation of the Fair Credit Reporting Act," "Violation of the Fair Debt Collection Practices Act," and "Defamation of Character". *Id.*

On July 15, 2011, defendants' filed the complaint against plaintiff in Michigan's 58th District Court, which sought $12,194.10 as the amount presently due on account no. 9760. *See* 58th

District Court Complaint. Defendants, however, did not serve plaintiff with a summons and complaint at that time.

In a letter dated October 3, 2011, defendants responded to plaintiff's request to validate the debt. *See* Defendants' Letter (October 3, 2011) (docket no. 19-1). Defendants' letter identified the creditor as Capital One, identified the credit card account (no. 9760), identified the current balance due as $12,522.89, stated that they represented Capital One, and referenced enclosed documents which validated the debt pursuant to § 1692g. The documents included: a Capital One Customer Agreement (i.e., printed terms of a credit card); a notification that plaintiff was "behind by 6 payments" and that his new balance due as of May 22, 2011 was $11,791.92, which included a past due fee of $35.00 and monthly interest of $177.41; and another notification that plaintiff's "account works differently now that you're 7 payments late" and that his balance, with additional past due fees and interest for the billing cycle was $12,001.69. *See* Documents (docket no. 19-1). The two past due notices included plaintiff's name, plaintiff's address, the credit card account number, the balance due, and the monthly interest and fees which had accrued since the previous credit card statement. *Id.*

On October 8, 2011, defendants served plaintiff with the 58th District Court complaint by certified mail. *See* Proof of Service (docket no. 19-2).

On November 14, 2011, defendants sent plaintiff a settlement letter proposing three settlement options. *See* Settlement Letter (Nov. 14, 2011) (docket no. 19-3). Under the first option, plaintiff could sign a consent judgment for the full balance due to Capital One with monthly payments of $265.00. *Id.* Under the second option, plaintiff could make a lump sum payment of $8,000.00 by January 9, 2012, and defendants would dismiss the 58th District Court Case. *Id.*

3

Under the third option, plaintiff could sign a consent judgment admitting that he owed the money and then petition the court for installment payments. *Id.* There is no evidence that plaintiff agreed to any of the settlement options.

On January 12, 2012, plaintiff filed the present federal action. *See* Compl. (docket no. 1).

On January 30, 2012, the 58th District Court entered judgment against plaintiff in the amount of $12,194.10 in damages, $180.09 in costs and $20.00 statutory attorney fees, for a total judgment of $12,394.19. 58th District Court Judgment (Jan. 30, 2012) (docket no. 19-4). In addition, the court awarded Capital One accrued judgment interest in the amount of $815.57. *Id.*

### B. Plaintiff's complaint

Plaintiff set forth the following allegations in his complaint. The information provided in the law firm's October 3, 2011 response to his demand for validation "was in no way legal or proper validation of the alleged debt and was in fact another collection action." Compl at ¶ 16. Defendants violated 15 U.S.C. § 1692g(b) for continuing collection activity without validating the alleged debt and a violation of 15 U.S.C. § 1692e(2)(10), because defendants "used a misleading representation by stating an entirely different amount as being due on the alleged debt" and that this response "was also a deceptive means used to collect a debt." *Id.*

Defendants' service of the 58th District Court complaint was a continued collection action in violation of 15 U.S.C. § 1692g(b) because they had not validated the original debt as requested. *Id.* at ¶ 17. In addition, the amount alleged to be owed to Capital One in the 58th District Court action was substantially different than the amounts previously stated to be owed, was

4

confusing to plaintiff, and was a blatant violation of 15 U.S.C. § 1692e(2)(l0), because the law firm and defendants Von Allmen, Gruca, and Winslow used a misleading representation of the amount of the alleged debt which was" a deceptive means used to collect a debt." *Id.* at ¶ 18. In addition, the law firm and defendants Von Allmen, Gruca, and Winslow failed to attach any verified statement of the damages alleged to have been incurred by Capital One, any alleged contract between Capital One and plaintiff, or any evidence that plaintiff ever had an account with Capital One. *Id.* at ¶ 19.

In addition, defendants' November 14, 2011 settlement demand stated "a radically different amount as being due on the alleged account," was "a false and misleading representation in the collection of a debt," and a false representation of the amount of the debt which were violations of 15 U.S.C. § 1692e(10) and § 1692e(2). *Id.* at ¶ 20.

Defendants' collection efforts of "harassing" him and "trying to coerce him to pay varying amounts at different times on the alleged debt before any trial in the county court" violated 15 U.S.C. § 1692d. *Id.* at ¶ 21. Such action was also "an unfair means to attempt to collect a debt in violation of 15 U.S.C. § 1692f" and "an attempt to collect an amount not authorized by the agreement creating the alleged debt in violation of 15 U.S.C. § 1692f(1)." *Id.*

Plaintiff alleged defendants also violated the FDCPA when the law firm appeared at a December 16, 2011, pre-trial conference in the 58th District Court, and continued to attempt to collect a disputed debt prior to validation in violation of 15 U.S.C. § 1692g(b). *Id.* at ¶ 22. In addition to the acts of the individual defendants, defendant Shermeta, in his position as a principal and president of the law firm, was aware, or should have been aware, of "the violative activities" of those employed by the law firm, and is individually liable for the actions of the other defnedants under the doctrine of respondeat superior. *Id.* at ¶ 23.

5

Plaintiff's *pro se* complaint seeks relief on four counts. In Count I, plaintiff claims that defendants violated 15 U.S.C. § 1692e(2) by using a false representation of the character, amount, or legal status of his alleged debt and violated 15 U.S.C. § 1692e(10) by using a false representation or deceptive means to collect or attempt to collect the alleged debt. *Id.* at ¶¶ 25-27. In Count II, plaintiff claims that defendants violation 15 U.S.C. § 1692d "because the natural consequence of their conduct was to harass, oppress, or abuse the Plaintiff into paying an alleged debt that Defendants at all times refused to properly validate." *Id.* at ¶¶ 28-30. In Count III, plaintiff claims that defendants violated 15 U.S.C. § 1692f "because their conduct constituted the use of unfair or unconscionable means to collect or attempt to collect a debt." *Id.* at ¶¶ 29-33. In Count IV, plaintiff claims that defendants violated 15 U.S.C. § 1692g(b), "because they continued collection activities, including initiating litigation, after Plaintiff had made a demand for validation of the alleged debt and no proper and legal validation was provided to the Plaintiff at any time up to the time this complaint was filed." *Id.* at ¶¶ 34-36. In Count V, plaintiff alleged that defendants violated M.C.L. § 339.918 because they "failed to properly provide validation of the alleged debt when requested by Plaintiff as required by MCL 339.918 before resuming collection actions against Plaintiff" and defendants' actions "in continually changing the amount due in communications with the Plaintiff" and not having any evidence on the record in the case in the 58th District court case "of any contract or verified proof of any obligation" by plaintiff to Capital One. *Id.* at ¶¶ 37-38.

Plaintiff seeks damages "including, but not limited to, fees and costs, time away from work, sleeplessness, severe emotional distress, depression, anger, embarrassment, and anxiety." *Id.* at ¶ 24. Specifically, plaintiff has requested: a declaratory judgment that defendants violated both the FDCPA and the state statute; actual damages in the amount of "any judgment" against plaintiff

in the 58th District Court case; statutory damages pursuant to 15 U.S.C. § 1692k in the amount of $1,000.00 per defendant; treble damages or $150.00, whichever is greater, pursuant to the state statute; and costs and fees pursuant to 15 U.S.C. § 1692k and M.C.L. § 339.916(2). *Id.* at p. 8.

## II. Standard of review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### III. Discussion

#### A. Facts at issue

Defendants have relied on the record as set forth in the documents cited in § I of this opinion. Plaintiff does not dispute these documents and in fact relies upon many of the same documents to support the allegations in his complaint. Plaintiff filed an affidavit in response to defendants' motion for summary judgment. However, this affidavit did not contest the evidence provided by defendants. Rather, the affidavit listed a number of documents which he did not receive from defendants and asserted that defendants did not comply with his discovery requests:

> 4. That he has never received independent documentation of whom defendants are representing after requesting validation of the alleged debt.
>
> 5. That he has never received a ledger statement from whoever the alleged creditor is.
>
> 6. That he has never received a copy of any contract bearing his signature between himself and any alleged creditor.
>
> 7. That he has never received evidence that the defendants have a license to collect accounts in the State of Michigan.
>
> 8. That he has never received defendants' license numbers and name of registered agent.
>
> 9. That defendants have not fully complied with the discovery requests served on them.

Plaintiff's Aff. (docket no. 24-1).

#### B. Discovery issue

In his response to defendants' motion for summary judgment, plaintiff contends that defendants failed to answer all of his discovery, by objecting to 20 of his 23 interrogatories and 12 of his 14 requests for production. Plaintiff's claim that defendants did not fully comply with his

8

discovery requests is not properly before the court. Plaintiff did not file a motion to compel production prior to the close of discovery on September 30, 2012. In fact, the record reflects that he has never filed a motion to compel production of discovery in this action. While plaintiff could conceivably seek relief under Fed. R. Civ. P. 56(d) on the ground that he "cannot present facts essential to justify [his] opposition" to the motion for summary judgment, plaintiff has not submitted an affidavit or declaration in support of such relief.

### C. Count IV

#### 1. Verification of the debt

While plaintiff has alleged various violations of the FDCPA, the wrongful conduct at the heart of his FDCPA claims is defendants' alleged violation of 15 U.S.C. § 1692g ("Validation of debts"). Section 1692g provides in pertinent part that:

(a) Notice of debt; contents

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

9

> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.
>
> (b) Disputed debts
>
> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. . .

15 U.S.C. § 1692g(a) and (b).

One main issue before the court is whether defendants violated § 1692g(b) by failing to verify the disputed debt. Plaintiff contends that he is entitled to, among other things, ledger statements, contracts, and proof that defendants are licensed to collect debts in Michigan. Defendants contend that they are not required to keep and send "detailed files" of the alleged debt for verification or validation purposes. Contrary to plaintiff's contention, § 1692g(b) does not require defendants to produce exhaustive documentation in support of the creditor's claim. "[T]he purpose of § 1692g(b) is to require debt collecting agencies to cease collection activities if the amount has been disputed until the debt collector verifies the accuracy of the amount claimed." *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025, 1031 (6th Cir. 1992) (internal quotation marks omitted). The FDCPA "does not require an independent investigation of the debt referred for collection." *Id.* at 1032. "Unlike the Fair Credit Reporting Act ("FCRA"), which requires the creditor to 'conduct an investigation' upon notification of the consumer's dispute of the debt, 15 U.S.C. § 1681s-2(b)(1), the FDCPA only requires that a debt collector 'obtain[ ] verification of the

debt.'" *Erickson v. Johnson*, No. 05-427, 2006 WL 453201 at \*6-7 (D. Minn. Feb. 22, 2006). Furthermore, the debt collector does not have a "concomitant obligation to forward copies of bills or other detailed evidence of the debt" to comply with the FDCPA's verification requirement. *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir.1999)

The Sixth Circuit explained the purpose of the verification requirement in *Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355 (6th Cir. 2012):

> A Senate Report states that the purpose of the Act's debt verification is to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." S. Rpt. 95–382 at 4, reprinted in 1977 U.S.C.C.A.N. 1695, 1699. A House Report noted congressional intent to regulate collection activities based on either "mistaken identity or mistaken facts." H.R.Rep. No. 131, at 8. Congress recognized that computer errors are a related problem, and that "[c]onsumers who are victims of computer error find it extremely difficult to obtain correction of records. This may lead to collection agency harassment." *Id.*

*Bridge*, 681 F.3d at 361.

In *Rudek v. Frederick J. Hanna & Associates, P.C.*, No. 1:08-cv-288, 2009 WL 385804 (E.D. Tenn. Feb. 17, 2009), the court addressed the issue of whether a debt collector complied with the verification requirements of § 1692g, stating in pertinent part:

> The Sixth Circuit has not addressed what constitutes appropriate verification. But other courts have held that the verification provided here – confirmation of the debt, which is then relayed to the debtor – is sufficient. *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir.1999) ("[V]erification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt."); *Ducrest v. Alco Collections*, 931 F.Supp. 459, 462 (M.D. La. 1996) (holding debt collector can rely on its clients' representation and has no duty to independently investigate claims); *Azar v. Hayter*, 874 F.Supp. 1314, 1317 (N.D.Fla.1994), *aff'd without opinion*, 66 F.3d 342 (11th Cir.1995) (The FDCPA does not "require a debt collector independently to investigate the merit of the debt, except to obtain verification, or to investigate the accounting principles of the creditor, or to keep detailed files."); *accord Clark v. Capital Credit & Collection*

11

*Servs.*, 460 F.3d 1162, 1174 (9th Cir.2006); *Anderson v. Frederick J. Hanna & Assocs.*, 361 F.Supp.2d 1379, 1383 (N.D. Ga. 2005).

*Rudek*, 2009 WL 385804 at *2.

Here, defendants' October 3, 2011 letter in response to plaintiff's request for verification identified the creditor as Capital One, identified the credit card account, identified the current balance due as $12,522.89, stated that defendants represented Capital One, and referenced the enclosed documents which validated the debt pursuant to § 1692g. *See* Oct. 3, 2011 Defendants' Letter (Oct. 3, 2011). Defendants' letter included a copy of Capital One's printed credit card agreement, as well as the 6th and 7th overdue notices sent from Capital One to plaintiff which identified the credit card number and the balance due. *Id.* at pp. 8-13.

Plaintiff points out that defendants' correspondence reflects different amounts due (i.e., the amount due increased over time), but this conduct does not demonstrate that defendants failed to verify the debt as required by the FDCPA. Rather, the different amounts reflect the fact that interest continued to accrue on plaintiff's account. The record includes an affidavit dated June 15, 2011, in which Stephen Hardy, an agent of Capital One, stated that: plaintiff opened an account with Capital One for the purpose of obtaining an extension of credit; that Capital One issued a credit card to plaintiff with a number ending in 9760; that plaintiff used the card for acquiring goods, services or advances; and that plaintiff breached the Customer Agreement by failing to make periodic payments as required by the Agreement. Hardy Aff. at ¶¶ 1-3 (docket no. 27-2). Mr. Hardy further stated that the books and records of Capital One show that plaintiff was currently indebted to Capital One on the account ending in 9760 "for the just and true sum of **$12011.32** as of **05/28/2011**, plus interest accruing from said date at an annual percentage rate in accordance with

the Customer Agreement, currently **14.65%** [.]" *Id.* at ¶ 4. It appears that defendants calculated the balance due on October 3, 2011, based upon this additional interest.[2]

In summary, defendants October 3, 2011 letter confirmed in writing the identity of the creditor and the amount which plaintiff owed as of the date of the letter. Nothing more is required under § 1692g. *See Smith*, 953 F.2d at 1031-32; *Chaudhry*, 174 F.3d at 406; *Rudek*, 2009 WL 385804 at *2.

### 2. Collection efforts during the 30-day validation period

In his response, plaintiff contends that defendants continued in their collection efforts during the 30-day time period in which plaintiff was allowed to dispute the debt. Here, defendants' June 8, 2011 letter notified plaintiff of his right to dispute the debt within thirty days of the receipt of the letter. Defendants prepared a summons and complaint against plaintiff, dated July 5, 2011. *See* 58th District Court Complaint. Plaintiff disputed the debt in a letter dated July 6, 2007, which defendants received on July 11, 2011. *See* Plaintiff's Letter (July 6, 2011) (docket no. 18-5). It appears that the complaint was filed in the 58th District Court on July 15, 2011, with summonses issued on that same date. *See* 58th District Court Complaint. Plaintiff contends that defendants violated the FDCPA by undertaking these actions during the 30-day period in which he had to dispute the debt.

The FDCPA explicitly addresses collection activities which may occur during this 30-day period as follows:

> Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) of

---

[2] The Court notes that defendants' methodology in calculating this additional interest does not appear in the record.

this section unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

15 U.S.C. § 1692g(b). These two sentences were added to 15 U.S.C. § 1692g(b) in 2006. *See* Financial Services Regulatory Relief Act of 2006, Pub. L. No. 109-351, § 802(c), 120 Stat. 1266, 2006-07 (2006). "[T]his amendment has generally been viewed as a codification of the 'overshadowed or contradicted' rule or gloss previously adopted by the courts themselves." *Caprio v. Healthcare Revenue Recovery Group, LLC*, 709 F.3d 142, 148-49 (3rd Cir. 2013).

In resolving plaintiff's claim, the court finds as persuasive the reasoning as set forth in *Ellis v. Solomon and Solomon, P.C.*, 591 F.3d 130 (2d Cir. 2010).[3] *Ellis* involved the service of a complaint against the plaintiff consumer during the 30-day validation period. The court held "that the validation notice was overshadowed where the a debt collector serves a consumer with process initiating a lawsuit during the validation period, without clarifying that the commencement of the lawsuit has no effect on the information conveyed in the validation notice." *Ellis*, 591 F.3d at 136. In finding that the consumer's validation notice was "overshadowed" by the service of a complaint in violation of the FDCPA, the court applied a least sophisticated consumer standard:

> Whether collection activities or communications within the validation period overshadow or are inconsistent with a validation notice is determined under the "least sophisticated consumer" standard. It is an objective standard, designed to protect all consumers, the gullible as well as the shrewd. A collection activity or communication overshadows or contradicts the validation notice if it would make the least sophisticated consumer uncertain as to her rights.

---

[3] Although *Ellis* involved the pre-amendment version of 15 U.S.C. § 1692g(b), the court's discussion involves the "overshadowed or contradicted" rule which was codified in 2006.

14

*Ellis*, 591 F.3d at 135 (internal citations and quotation marks omitted). The same standard applies in this case.

Here, the record reflects that defendants filed the lawsuit in the 58th District Court before the expiration of the 30-day period. However, unlike the debt collector in *Ellis*, defendants did not serve plaintiff until *after* they responded to his letter requesting verification of the debt on October 3, 2011 and there is no evidence that plaintiff was even aware of the complaint filed against him. Under these circumstances, the least sophisticated consumer would have no reason to be concerned or uncertain about his right to seek validation for a disputed debt. In the court's opinion, defendants did not overshadow or act inconsistently with plaintiff's right to dispute the debt when they filed, but did not serve, a complaint against plaintiff during the 30-day period and there is no evidence that plaintiff knew about the complaint. *See Federal Home Loan Mortgage Corporation v. Lamar*, 503 F.3d 504, 510 (6th Cir. 2007) (the critical question in determining whether a violation of 15 U.S.C. § 1692g occurred is "whether the [debtor] has been led to believe that [he] did not have thirty days in which to dispute the validity of the debt") (internal quotation marks omitted). Accordingly, defendants are entitled to summary judgment as to Count IV.

### C. Counts I and II

Plaintiff's Counts I and II arose from defendants' alleged failure to verify the debt. *See* Compl. at ¶¶ 25-30. Specifically, Count I alleged violations of 15 U.S.C. § 1692e(2) (a debt collector may not use a false representation of "the character, amount, or legal status of any debt" in connection with the collection of any debt) and 15 U.S.C. §1692e(10) (the use of a false representation or deceptive means to collect a debt), while Count II alleged a violation of 15 U.S.C. § 1692d ("[a] debt collector may not engage in any conduct the natural consequence of which is to

harass, oppress, or abuse any person in connection with the collection of a debt"). Because the court has determined that defendants properly verified plaintiff's debt, there is no factual basis in support either of these counts. Accordingly, defendants are entitled to summary judgment with respect to Counts I and II.

### D. Count III

Plaintiff's Count III alleged violations of 15 U.S.C. § 1692f (the use of "unfair or unconscionable means to collect or attempt to collect any debt"). Specifically, plaintiff alleged that defendants engaged in unconscionable means to collect the debt because they tried "to coerce him to pay varying amounts at different times on the alleged debt before any trial in the county court" in violation of 15 U.S.C. § 1692f and this "was an attempt to collect an amount not authorized by the agreement creating the alleged debt" in violation of 15 U.S.C. § 1692f(1). Compl. at ¶ 21. *See* 15 U.S.C. § 1692f(1) (providing that the following conduct is an unfair practice under § 1692f "(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law").

The record reflects that defendants sent plaintiff three letters with respect to this debt: a letter dated June 8, 2011, demanding payment of the current amount due of $12,064.23 and advising plaintiff that "[b]ecause of interest and other charges that may accrue, the amount you owe may continue to increase daily"; a letter dated October 3, 2011 verifying the current amount of the debt as $12,522.89; and a letter dated November 14, 2011, offering plaintiff various options for settling the dispute. *See* Defendants' Letters (June, 8, 2011); (Oct. 3, 2011); (Nov. 14, 2011). There is no question that the amount due increased between June 8, 2011 and October 3, 2011. This

16

increase could be explained by Mr. Hardy's affidavit, which established that under plaintiff's credit card agreement, his balance due on May 28, 2011 ($12,011.69) would accrue interest at an annual percentage rate of 14.65%. *See* Hardy Aff. at ¶ 4. Plaintiff has failed to produce any evidence that the amounts demanded by defendants were not authorized by the agreement in violation of 15 U.S.C. § 1692f(1). In the court's opinion, the three letters sent by defendants did not constitute "coercion" in violation in the FDCPA. Indeed, the October 3, 2011 letter verifying the debt was sent to plaintiff pursuant to the terms of the FDCPA. Accordingly, defendants are entitled to summary judgment with respect to Count IV.

   **E.**  **Count V**

Plaintiff's Count V seeks relief under state law. While plaintiff alleged that defendants violated the "Michigan Collection Practices Act, M.C.L. § 339.901 et seq.", his reference to that Act is a misnomer. Two acts in Michigan govern debt collection, M.C.L. § 339.101 *et seq.,* the Michigan Occupational Code (MOC) and M.C.L. § 445.251 *et seq.*, the Michigan Debt Collection Practices Act. *See Montgomery v. Shermeta, Adams & Von Allmen, P.C.*, 885 F. Supp. 2d 849, 858 (W.D. Mich. 2012); *Voydanoff v. Select Portfolio Servicing, Inc.*, No. 298098, 2011 WL 6757841 at *10 (Mich. App. Dec. 22, 2011). The only statute referenced in plaintiff's complaint is a section of the MOC, M.C.L. § 339.918, which contains a debt verification requirement similar to the FDCPA.[4] Compl. at ¶¶ 1 and 38. Defendants, however, are not subject to M.C.L. § 339.918

---

[4] M.C.L. § 339.918(2) provides as follows:

  If the consumer notifies the collection agency in writing, within 30 days after receiving the written notice, that the debt, or any portion of the debt, is disputed, collection of the debt or any disputed portion of the debt shall cease until the collection agency obtains verification of the debt and a copy of the verification or judgment is mailed to the consumer by the collection agency. Verification of the debt or any disputed portion of the debt shall include the number and amount of previously made payments and the name and address of

17

because the MOC exempts attorneys from the code's definition of a "collection agency." *See* M.C.L. § 339.901(b)(xi) ("Collection agency does not include a person whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency such as, but not limited to, the following: . . . (xi) An attorney handling claims and collections on behalf of clients and in the attorney's own name"). *See Montgomery*, 885 F. Supp. at 858 (both individual attorneys and law firms fall within the attorney exemption set forth in M.C.L. § 339.901(b)(xi)). Accordingly, defendants are entitled to summary judgment as to Count V.

### IV.  Conclusion

For the reasons set forth in this opinion, defendants' motion for summary judgment (docket no. 17) will be **GRANTED**, and the case **DISMISSED**. An order consistent with this opinion shall be issued forthwith.


Dated: June 11, 2013 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

---

the original creditor, if different from the current creditor, or a copy of the judgment against the debtor.